UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                        :     Chapter 11

SOUTH CANAAN CELLULAR                        :
INVESTMENTS, LLC, and
                                             :
SOUTH CANAAN CELLULAR
EQUITY, LLC                                  :     Bankruptcy No. 09-10473bf

                     Debtors                 :     (Jointly Administered with 09-10474)
_____

SOUTH CANAAN CELLULAR                        :
INVESTMENTS, LLC, and
                                             :
SOUTH CANAAN CELLULAR
EQUITY, LLC                                  :

                     Plaintiffs              :
              v.
                                             :
LACKAWAXEN TELECOM, INC. and        Adversary No. 09-0218
FRANK M. COUGHLIN                            :

                     Defendants              :
_____

.................................................

MEMORANDUM AND REPORT

.................................................

Defendants Lackawaxen Telecom, Inc. ("LTI") and Mr. Frank Coughlin

have filed a joint motion seeking to dismiss the above-captioned adversary proceeding.

They assert that dismissal is warranted under Fed. R. Bankr. P. 7012, which incorporates,

inter alia, Fed. R. Civ. P. 12(b)(1), (2), (5), (6), (7).  The plaintiffs oppose dismissal.  For

the following reasons, I shall recommend to the district court that all counts of the

complaint be dismissed as to defendant Coughlin.  I shall further dismiss one count of the

complaint against defendant LTI.


I.


A.


In this adversary proceeding, the debtors allege that defendant Frank

Coughlin, who is a shareholder of LTI and a member of both limited liability company

debtors, improperly obtained assignments of the debtors' loan obligations from CoBank,

ACB in 2007.  The debtors assert seven alternative and overlapping claims against Mr.

Coughlin in connection with those loan assignments: breach of duty of loyalty; breach of

duty of candor/disclosure; usurpation of business opportunity; breach of duty of good

faith; breach of duty of care; breach of fiduciary duty; and breach of duty of good faith

and fair dealing.

In addition, the debtors assert a claim against defendant LTI for allegedly

aiding and abetting Mr. Coughlin in his breach of these various duties to the debtors.

They also include an objection to the $13.5 million secured proofs of claim filed by LTI

in each of the debtors' chapter 11 bankruptcy cases.  See Fed. R. Bankr. P. 3007(b) (an

objection to a proof of claim "may be included in an adversary proceeding").

In their objection to LTI's proofs of claim, the debtors seek to disallow

LTI's claims because: the assignments of the loans from Co-Bank to LTI should be

invalidated; a constructive trust should be imposed upon any gain or profit LTI received

owing to these loan assignments; LTI should be precluded from receiving any accrued interest or attorney's fees arising from the Co-Bank loans; the prepetition interest component of LTI's proofs of claim was improperly computed; and the attorney's fees components of the proofs of claim are excessive.  In addition, as to both defendants, the debtors demand damages, imposition of a constructive trust, invalidation of the CoBank assignment, injunctive relief, and attorney's fees and costs, based upon their claims of breaches of duties and aiding and abetting such breaches.

Defendant Coughlin contends that this court has no subject matter jurisdiction over the six state-law breach of duty counts raised against him and well as the one implied contractual claim, and so asserts that dismissal as to all counts is warranted under Rule 12(b)(1).  In addition, he contends that the debtors did not obtain personal jurisdiction over him and failed to make proper service, requiring dismissal under Rule 12(b)(2), (5).

By virtue of 28 U.S.C. § 1334, there are three types of adversary proceedings for which bankruptcy court subject matter jurisdiction exists: those adversary proceedings involving claims "arising in" or "arising under" the Bankruptcy Code, and those proceedings whose claims are "related to" the bankruptcy case.  See, e.g., In re W.R. Grace & Co., 591 F.3d 164, 171 (3d Cir. 2009).  The first two categories are classified as "core" proceedings, while the third is classified as "non-core" or "related."

An adversary proceeding "arises under" the Bankruptcy Code if it asserts a claim based upon a particular provision of title 11.  See, e.g., Stoe v. Flaherty, 436 F.3d 209, 216 (3d Cir. 2006).  "A civil proceeding 'arises in' a Title 11 case when it is not

3

created or determined by the bankruptcy code, but where it would have no existence

outside of a bankruptcy case." In re Harris, 590 F.3d 730, 737 (9th Cir. 2009).  That is,

"[p]roceedings 'arise in' a bankruptcy case, if they have no existence outside of the

bankruptcy." United States Trustee v. Gryphon at the Stone Mansion, Inc., 166 F.3d 552,

556 (3d Cir.1999); see Stoe v. Flaherty, 436 F.3d at 216.  "The 'arising in a case under'

category is generally thought to involve administrative-type matters[.]" In re Toledo, 170

F.3d 1340, 1345 (11th Cir. 1999).

Thus, a proceeding is classified as "core" under 28 U.S.C. § 157 "if it

invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature,

could arise only in the context of a bankruptcy case." In re Marcus Hook Development

Park, Inc., 943 F.2d 261, 267 (3d Cir. 1991) (quoting Beard v. Braunstein, 914 F.2d 434,

444 (3d Cir. 1990), which, in turn, quoted Matter of Wood, 825 F.2d 90, 97 (5th Cir.

1987)).  Accordingly, "[i]f the proceeding does not invoke a substantive right created by

the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a

core proceeding . . . ." In re Guild and Gallery Plus, Inc., 72 F.3d 1171, 1178 (3d Cir.

1996).

"Even if a claim is not a core proceeding, a bankruptcy court may still have

jurisdiction over the claim if the claim is 'related to a case under title 11[.]'" In re

Winstar Communications, Inc., 554 F.3d 382, 405 (3d Cir. 2009) (quoting 28 U.S.C. §

157(c)(1)).  As the Third Circuit Court of Appeals has explained:

> Non-core proceedings include the broader universe of all
> proceedings that are not core proceedings but are nevertheless
> "related to" a bankruptcy case.  See 28 U.S.C. § 157(c)(1).
> "[T]he test for determining whether a civil proceeding is
> related to bankruptcy is whether the outcome of that
> proceeding could conceivably have any effect on the estate

4

> being administered in bankruptcy." Pacor v. Higgins, 743
> F.2d 984, 994 (3d Cir. 1984) (emphasis omitted); see In re
> Guild, 72 F.3d at 1180-81. "[T]he proceeding need not
> necessarily be against the debtor or against the debtor's
> property." In re Guild, 72 F.3d at 1180-81. "'A key word in
> [this test] is conceivable. Certainty, or even likelihood, is not
> a requirement. Bankruptcy jurisdiction will exist so long as it
> is possible that a proceeding may impact on the debtor's
> rights, liabilities, options, or freedom of action or the handling
> and administration of the bankrupt estate.'" Id. at 1181
> (quoting In re Marcus Hook, 943 F.2d at 264) (emphasis
> omitted).

Halper v. Halper, 164 F.3d 830, 837 (3d Cir. 1999) (footnote omitted); see, e.g., In re

W.R. Grace & Co., 2009 WL 5151089, at *4-*5; Stoe v. Flaherty, 436 F.3d at 216.

In other words, "for an action to be related to a bankruptcy case, its

outcome must potentially have some effect on the bankruptcy estate, such as altering

debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact

upon the handling and administration of the bankrupt estate." In re Smith, 866 F.2d 576,

580 (3d Cir. 1989). A proceeding may be related to a bankruptcy case even though the

debtor is not a party. See In re Guild and Gallery Plus, Inc., 72 F.3d 1171, 1181 (3d Cir.

1996).

In general, adversary proceedings whose outcome could affect the amount

of claims against the estate or the assets available for distribution to creditors or equity

holders are related to the underlying bankruptcy case. See, e.g., In re Toledo, 170 F.3d

1345-46 (finding "related to" jurisdiction when the outcome of the proceeding could

affect the assets distributed to creditors); Diamond Mortg. Corp. v. Sugar, 913 F.2d 1233,

1239 (7th Cir. 1990), cert. denied, 498 U.S. 1089 (1991); Brock v. Morysville Body

Works, Inc., 829 F.2d 383, 385 (3d Cir. 1987) ("[E]nforcement of the Commission's

citations against [the debtor] will undoubtedly alter its liabilities and have an impact on

the administration of the debtor's estate."); Matter of Xonics, Inc., 813 F.2d 127, 131 (7th Cir. 1987) (A proceeding is "related to" a bankruptcy case when "it affects the amount of property available for distribution or the allocation of property among creditors.").

In this adversary proceeding, where multiple claims are raised, the various claims must be analyzed for bankruptcy jurisdictional purposes on a claim-by-claim basis. Halper v. Halper, 164 F.3d at 839; see In re Mullarkey, 536 F.3d 215, 223 (3d Cir. 2008).

In considering first the aiding and abetting claim raised against LTI, as well as the debtors' objection to LTI's proofs of claim, I conclude that both are core matters, as they are part of the claims allowance process that could only occur in this bankruptcy case. See 28 U.S.C. § 157(b)(2)(B); see also In re CBI Holding Co., Inc., 529 F.3d 432, 460-61 (2d Cir. 2008); In re Iridium Operating LLC, 285 B.R. 822, 831 (S.D.N.Y. 2002) (and cases cited).

Conversely, the seven claims asserted against Mr. Coughlin are all based upon state law and could have been asserted independently of the debtors' two bankruptcy cases. They are "related" to those bankruptcy cases, however, as the relief requested includes a demand for damages and for equitable relief that, if successful, would increase the assets of the bankruptcy estate available for distribution. See, e.g., Matter of Delaware & Hudson Ry. Co., 122 B.R. 887, 894-95 (D. Del. 1991); In re Jamuna Real Estate, LLC, 357 B.R. 324, 336 (Bankr. E.D. Pa. 2006) (and cases cited). The defendants' contention that the assets owned by the debtors—viz., their interest in a limited partnership—are themselves sufficient to repay all creditors in full without regard to the outcome of this adversary proceeding does not undermine this conclusion. The

6

claims against Mr. Coughlin could conceivably increase the distributions made to the

debtors' equity holders: i.e., the members of the debtor limited liability companies.

Accordingly, this court has subject matter jurisdiction over all of the claims

raised in this adversary proceeding and the defendants' motion to dismiss on this

jurisdictional basis must be denied.  However, as not all parties have consented to my

entering a final judgment on the noncore, related claims raised against defendant

Coughlin, see 28 U.S.C. § 157(c), a complete disposition of those claims will require a

recommendation to the district court for the entry of a final order.  28 U.S.C. § 157(c)(1);

see, e.g. DePaola v. Nissan Hosp. America, Inc., 2005 WL 2122265, at *2 (M.D. Ala.

2005) (a bankruptcy court must enter a recommendation as to dispositive motions

involving non-core claims); In re NM Holdings Co., LLC, 2008 WL 6334036 (Bankr.

E.D. Mich. 2008); In re Durango-Georgia Paper Co., 2007 WL 7023837, at *1, *6

(Bankr. S.D. Ga. 2007); In re Seivers, 2006 WL 3087688 (Bankr. W.D. Pa. 2006).  The

aiding and abetting claim against defendant LTI, however, can be fully adjudicated in this

court.  See generally Langenkamp v. Culp, 498 U.S. 42, 44 (1990) ("[B]y filing a claim

against a bankruptcy estate the creditor triggers the process of 'allowance and

disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable

power.); In re Adelphia Communications Corp., 307 B.R. 404, 418-20 (Bankr. S.D.N.Y.

2004); In re Performance Nutrition, Inc., 239 B.R. 93, 99 (Bankr. N.D. Tex. 1999).

B.


Defendant Coughlin also asserts that this court lacks personal jurisdiction

over him, as he is a non-Pennsylvania resident and does not have sufficient minimal

contacts with this state.  See generally International Shoe Co. v. State of Washington

Office of Unemployment Compensation and Placement, 326 U.S. 310 (1945).  The

debtors disagree, contending, via affidavit, that he has sufficient contacts with

Pennsylvania to be subject to suit in this court.

I need not decide whether defendant Coughlin has minimum contacts with

Pennsylvania.  Congress has established nationwide service of process in adversary

proceedings by enacting Fed. R. Bankr. P. 7004(d).  See, e.g., Phar-Mor, Inc. v. Coopers

& Lybrand, 22 F.3d 1228, 1237-38 (3d Cir. 1994); Windsor Communications Group, Inc.

v. Grant, 75 B.R. 713, 730 (E.D. Pa. 1985) ("With the enactment of the Bankruptcy

Reform Act of 1978 ('BRA'), Congress extended the jurisdiction of the new United

States Bankruptcy Courts to the territorial limits of the United States. Thus, nationwide

service of process as authorized by Rule 704 would be combined with nationwide

jurisdiction, to permit Bankruptcy Courts to exercise in personam jurisdiction over

anyone who could be served by mail within the United States.").  The only issue, not in

dispute here, would be whether Mr. Coughlin has minimum contacts with the United

States; if so, then personal jurisdiction exists.  See Diamond Mortg. Corp. of Illinois v.

Sugar, 913 F.2d at 1244 ("Hence, whether there exist sufficient minimum contacts

between the attorneys and the State of Illinois has no bearing upon whether the United

States may exercise its power over the attorneys pursuant to its federal question

jurisdiction.  Certainly, the attorneys have sufficient contacts with the United States to be

subject to the district court's in personam jurisdiction."); In re Funquest Vacations, Inc.,

1998 Bankr. Lexis 713, at *12-*16 (Bankr. E.D. Pa. 1998) (and cases cited).

Furthermore, this extensive reach of personal jurisdiction is constitutionally permissible

under Congress's Article I powers.  See, e.g., In re Federal Fountain, Inc., 165 F.3d 600

(8th Cir. 1999) (en banc); Diamond Mortg. Corp. of Illinois v. Sugar,  913 F.2d at 1244

("We therefore conclude that the nationwide service of process provisions of Bankruptcy

Rule 7004(d) do not violate the Barron and Jaffe Attorneys' due process rights in this

case, and that the district court may exercise its in personam jurisdiction over these

attorneys."); Windsor Communications Group, Inc. v. Grant; cf. Gambone v. Lite-Rock

Drywall Corp., 124 Fed. Appx. 78 (3d Cir. 2005) (non-precedential) ("We have

previously held 'that a federal court's personal jurisdiction may be assessed on the basis

of the defendant's national contacts when the plaintiff's claim rests on a federal statute

authorizing nationwide service of process.'") (quoting Pinker v. Roche Holdings Ltd.,

292 F.3d 361, 369 (3d Cir. 2002)); In re Fruehauf Trailer Corp., 250 B.R. 168 (D. Del.

2000) (ERISA provision for nationwide service of process and application of a national

contacts test was constitutional).[1]

      Similarly, Mr. Coughlin's assertion of "insufficient service of process"

under Rule 12(b)(5) is unavailing.  Although Rule 7004(b)(1) permits service of the

summons and complaint by first class mail, postage prepaid, upon an individual

---

[1]Thus, I need not decide whether Mr. Coughlin does or does not have minimal contacts with Pennsylvania for specific jurisdiction.  Moreover, he does not argue that it would be an undue burden for him to defend against the debtors' claims in this forum.  See generally Pinker v. Roche Holdings Ltd., 292 F.3d 361 (3d Cir. 2002); Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935 (11th Cir. 1997).

defendant, see, e.g., Stephenson v. El-Batrawi, 524 F.3d 907, 911 n.5 (8th Cir. 2008);

Matter of Smith, 111 F.3d 133 (Table), 1997 WL 174101 (7th Cir. 1997), the debtors here

have filed a certificate averring that defendant Coughlin was served personally within ten

days of the issuance of the summons, pursuant to Fed. R. Civ. P. 4(e), which is also

permitted under Rule 7004(b).  See In re Maloni, 282 B.R. 727, 731 (B.A.P. 1st Cir.

2002) ("Rule 7004 provides for either personal service of the summons and the

complaint, or alternatively, service may be made within the United States by first class

mail postage prepaid.").

 Accordingly, as the debtors' certificate of service in this proceeding reflects

compliance with Rule 7004(b), and the defendant does not contend that this certificate is

erroneous, defendant Coughlin's motion to dismiss under Rule 12(b)(2) and (5) must be

denied.  See generally U.S. Fire Insurance Co. v. Jesco Construction Corp. 2003 WL

21689654, at *4 (S.D.N.Y. 2003); Garcia v. Cantu, 363 B.R. 503 (Bankr. W.D. Tex.

2006).


II.


 Having concluded that I have both subject matter jurisdiction over the

claims made by the debtors, as well as personal jurisdiction over the defendants, I now

consider the defendants' primary assertion: that Mr. Coughlin, as a non-managing

member of the debtors/limited liability companies, had no fiduciary or other duties to

those entities and thus no claims are stated for a breach of those duties.  Similarly, if

defendant Coughlin could not have breached any duties to the debtors, there can be no

claim against defendant LTI for aiding and abetting him.[2]

Therefore, defendants Coughlin and LTI seek to dismiss the instant

complaint under Fed. R. Bankr. P. 7012, which procedural rule incorporates, inter alia,

Fed. R. Civ. P. 12(b)(6).  Recently, the Supreme Court explained the standard for

determining whether a complaint states a cause of action, thus entitling the plaintiff to

proceed to discovery and possibly to trial.

> To survive a motion to dismiss, a complaint must contain
> sufficient factual matter, accepted as true, to "state a claim to
> relief that is plausible on its face."  [Bell Atlantic Corp. v.
> Twombly, 550 U.S. 544,  570, 127 S. Ct. 1955 (2007)].  A
> claim has facial plausibility when the plaintiff pleads factual
> content that allows the court to draw the reasonable inference
> that the defendant is liable for the misconduct alleged.  Id., at
> 556, 127 S. Ct. 1955.  The plausibility standard is not akin to
> a "probability requirement," but it asks for more than a sheer
> possibility that a defendant has acted unlawfully.  Ibid.
> Where a complaint pleads facts that are "merely consistent
> with" a defendant's liability, it "stops short of the line
> between possibility and plausibility of 'entitlement to relief.'"
> Id., at 557, 127 S. Ct. 1955 (brackets omitted).
>
> Two working principles underlie our decision in Twombly.
> First, the tenet that a court must accept as true all of the
> allegations contained in a complaint is inapplicable to legal
> conclusions.  Threadbare recitals of the elements of a cause of
> action, supported by mere conclusory statements, do not
> suffice.  Id., at 555, 127 S. Ct. 1955 (Although for the
> purposes of a motion to dismiss we must take all of the factual
> allegations in the complaint as true, we "are not bound to
> accept as true a legal conclusion couched as a factual
> allegation" (internal quotation marks omitted)).  Rule 8 marks
> a notable and generous departure from the hyper-technical,

---

[2]At oral argument, the debtors acknowledged withdrawing their relief request that
the loan assignment from CoBank to LTI be rescinded or invalidated.  Thus, the defendants
withdrew their motion under Rule 12(b)(7) that this proceeding be dismissed owing to the
debtors' failure to join a necessary party.

code-pleading regime of a prior era, but it does not unlock the
doors of discovery for a plaintiff armed with nothing more
than conclusions.  Second, only a complaint that states a
plausible claim for relief survives a motion to dismiss.  Id., at
556, 127 S. Ct. 1955.  Determining whether a complaint states
a plausible claim for relief will, as the Court of Appeals
observed, be a context-specific task that requires the
reviewing court to draw on its judicial experience and
common sense.  [Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d
Cir. 2007.]  But where the well-pleaded facts do not permit
the court to infer more than the mere possibility of
misconduct, the complaint has alleged—but it has not
"show[n]"—"that the pleader is entitled to relief."  Fed. Rule
Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion
to dismiss can choose to begin by identifying pleadings that,
because they are no more than conclusions, are not entitled to
the assumption of truth.  While legal conclusions can provide
the framework of a complaint, they must be supported by
factual allegations.  When there are well-pleaded factual
allegations, a court should assume their veracity and then
determine whether they plausibly give rise to an entitlement to
relief.

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).

Accordingly, I shall accept the debtors' factual allegations as true, as well

as all reasonable inferences that may be drawn from those allegations.  If, nonetheless,

this complaint fails to meet the pleading standard set forth in Iqbal, dismissal is

warranted, see, e.g., Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); In re Joubert,

411 F.3d 452 (3d Cir. 2005); Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988),

unless leave to amend is appropriate.  See, e.g., Jones v. Domalakes, 161 Fed. Appx. 216,

217 (3d Cir. 2006) (non-precedential); Chemtech Intern., Inc. v. Chemical Injection

Technologies, Inc., 170 Fed. Appx. 805, 811 (3d Cir. 2006) ("[I]n this circuit, '[w]hen a

plaintiff does not seek leave to amend a deficient complaint after a defendant moves to

dismiss it, the court must inform the plaintiff that he has leave to amend within a set

period of time, unless amendment would be inequitable or futile.'") (quoting <u>Grayson v.</u>
<u>Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002)); <u>Griffin-El v. Beard</u>, 2009 WL
1229599, at *6 (E.D. Pa. 2009).  Where, however, the opportunity to replead would not
correct the defects in a party's claim, a court need not grant leave to amend.  <u>See</u> <u>e.g.</u>,
<u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004) ("We have held that even when a
plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal,
a District Court must permit a curative amendment, unless an amendment would be
inequitable or futile."); <u>Peterson v. Philadelphia Stock Exchange</u>, 717 F. Supp. 332, 337
(E.D. Pa. 1989); <u>see also</u> <u>Massarsky v. General Motors Corp.</u>, 706 F.2d 111, 125 (3d Cir.
1983); <u>Sarfaty v. Nowak</u>, 369 F.2d 256, 259 (7th Cir. 1966) ("Rule 15(a) does not require
a court to do a futile thing.").


III.


The plaintiffs have alleged the following facts that, for purposes of the
defendants' motion to dismiss, I accept as true.

The debtors/plaintiffs are two limited liability companies, organized under
the laws of the state of Delaware.  Both debtors are partners in a limited partnership
known as South Canaan Cellular Communications Company, L.P. ("SCCCC, LP").
SCCCC, LP is a wireless service provider servicing a licensed area in rural northern and
eastern Pennsylvania located in Wayne and Pike counties.  Plaintiff South Canaan
Cellular Investments, LLC (SCCI) is the general partner of SCCCC, LP.  Plaintiff South

Canaan Cellular Equity, LLC (SCCE) is a limited partner of SCCCC, LP.  SCCI and

SCCE hold 1% and 39.8% partnership interests in SCCCC, LP respectively.

Defendant Coughlin, in his individual capacity, is a member of SCCI and

SCCE, and holds a 30.8% interest in each entity.  Furthermore, Mr. Coughlin is the

president and a shareholder of defendant Lackawaxen Telecom, Inc. ("LTI"), a Delaware

corporation with a principal place of business in Rowland, Pennsylvania.  LTI provides

"traditional wire-line service, as well as associated telecommunications services" in a

licensed area within Pike County, Pennsylvania.  While LTI has a principal place of

business in Pennsylvania, Mr. Coughlin resides in Fayettville, New York.

Although Mr. Coughlin is a member of the plaintiffs, the plaintiffs do not

allege that Mr. Coughlin is involved in the management of the two limited liability

companies, nor that his 30.8% interest allows him to exert any control over the debtors'

operations.  Moreover, the plaintiffs do not attach any operating agreement, disclosing

either the management responsibilities or duties of their members.  Therefore, for the

purpose of resolving this motion to dismiss, I shall consider defendant Coughlin to be a

passive investor in the debtors.

In October 2000, the debtors borrowed $7.5 million from CoBank, ACB.

This loan was secured by, inter alia, the debtors' partnership interests in the LP, as well as

by the partnership interest of a third limited partner, the South Canaan Telephone

Company (SCTC).  At the same time, SCCCC, LP borrowed $3 million from CoBank, via

a loan that contained a cross-default clause that would permit CoBank to declare the

SCCCC, LP loan to be in default in the event of a default of the CoBank loan to the

debtors.

14

Beginning in April 2003, the debtors were no longer able to tender payments on the CoBank loan, and CoBank declared the loan to be in default on May 1, 2003. CoBank, however, took no other action to enforce its rights under the loan agreement. Indeed, after declaring the debtors' loan to be in default, CoBank loaned an addition $3.5 million to SCCCC, LP, and removed the cross-default provision in the prior loan.

In 2004, a CoBank representative stated that the lender did not expect to collect accrued unpaid interest on the debtors' loan. In 2007 creditor representatives "indicated that the bank would accept a discounted amount of the outstanding principal balance to settle the loan." Complaint, ¶ 19. The debtors entered into negotiations with CoBank "to restructure the loan over time or to pay a discounted settlement amount to extinguish their loan obligations." Id.

The debtors aver that they made a proposal in July 2007 to CoBank to restructure the loan, which proposal CoBank rejected. In late September 2007, CoBank advised the debtors that it would settle "for not less than $5 million and was entertaining selling the note." Complaint, ¶ 21. In response, on October 19, 2007, the debtors informed CoBank that they intended to raise the $5 million. CoBank "replied that it could not respond because it had entered a silent period within [sic] a prospective buyer." Id. On October 23, 2007 the debtors and SCTC began making arrangements to raise $5 million, but were notified on October 25, 2007 by CoBank that the note had been assigned to LTI. Complaint, ¶ 22.

The debtors imply that LTI's successful negotiations with CoBank in
October 2007 were aided by information received by Mr. Coughlin from the debtors in
June 2007.  They assert:

> During an annual shareholders' meeting of an affiliated
> company on June 22, 2007, Coughlin demanded that he be
> provided with the details of all discussions with CoBank
> regarding the Co-Borrower loan.  Specifically, Coughlin
> wanted to know the specific terms and conditions of any
> proposals that had been made to CoBank.  Coughin asserted
> that he was interested in the details of the negotiations of
> CoBank in order to protect his interest as a member of SCCI
> and SCCE.  In response to these demands, the co-borrowers
> provided Coughlin with limited and general information about
> the settlement discussions with CoBank.

Complaint, ¶ 24.

The debtors further aver that in June 2007, Coughlin "had already entered
into or was arranging to enter into secret negotiations with CoBank to purchase the same
loan he knew SCCI and SCCE were attempting to re-negotiate."  Complaint, ¶ 26.
"Using the confidential information he had acquired as a result of his standing as a
member of SCCE and SCCI, Coughlin arranged for LTI to purchase the Co-Borrower
loan via assignment from CoBank on October 25, 2007 with terms substantially similar to
those offered by CoBank to South Canaan.  Specifically, LTI paid $5.25 million to
CoBank for the loan."  Complaint, ¶ 26.

By having LTI take an assignment of the CoBank loan, the debtors allege
that defendant Coughlin "deprived [them] of an economic opportunity that was critical to
[their] financial survival" and thereby sought "to seize control of the operations of the
profitable SCCCC, LP by taking control of the partnership interests in the company that

16

SCCI and SCCE, along with SCTC, had pledged as security for the Co-Borrower loan."
Complaint, ¶ 27.

After purchasing the note, Coughlin told representatives of the debtors that
LTI intended to act as their lender going forward, and expressed a willingness to forbear
collection and amend the note to an agreed-upon principal and interest rate. The debtors
submitted such a proposed restructuring on November 7, 2007, but Coughlin and LTI
rejected that proposal a week later. Coughlin then instructed the debtors' representatives
that his taking control of SCCCC, LP would be a pre-condition to any further discussions
concerning the loan.

Throughout the latter half of 2008, the debtors and LTI engaged in several
discussions seeking to restructure the loan. LTI and Coughlin rejected several of the
debtors' proposals, and continued to insist on transfer of control of SCCCC, LP as a
condition to any settlement. LTI and Coughlin then declared the note to be in default on
January 23, 2009 by letter to SCCI, SCCE and their affiliates. LTI also filed a complaint
in the District Court for the City and County of Denver, Colorado against the Co-
Borrowers, seeking, inter alia, declaratory relief affirming its right to exercise control of
the debtors' partnership interests in SCCCC, LP. In response, SCCI and SCCE filed
chapter 11 bankruptcy petitions on January 25, 2009.


IV.


In Count I the debtors assert that, as a member of two limited liability
companies, defendant Coughlin owes a duty of loyalty to those companies. That duty was

breached when defendant Coughlin "both failed to maintain the confidentiality of Plaintiffs' confidential information and documents and in fact misused that information for personal and competitive gain against Plaintiffs." Complaint, ¶ 37. He allegedly also breached that duty "when he secretly negotiated with Plaintiffs' lender, CoBank, in an attempt to gain control over the Co-Borrower loan and therefore control over Plaintiffs themselves, all for the ultimate benefit of himself and his competing telecommuncations company, LTI," id., ¶ 38, and by interfering with the debtors' negotiations with CoBank. Id., ¶ 40.

In Count II, the debtors assert that, as one of their members, defendant Coughlin owed them a "duty of candor/disclosure," which duty was breached when he obtained "confidential information under false pretenses," id., ¶ 48, when he secretly negotiated with CoBank on behalf of LTI, id., at 49, and when he "secretly diverted a business opportunity from Plaintiffs, namely, the opportunity to resolve the Co- Borrower loan." Id., ¶ 50.

In Count III, the debtors allege that members of limited liability companies owe a duty not to usurp business opportunities of those companies. This duty was breached when LTI, through Coughlin's efforts, "secretly purchased the Co-Borrower loan from CoBank without notifying Plaintiffs." Id., ¶ 55. Moreover, LTI was able to do so based upon information defendant Coughlin obtained from the debtors.

Relying upon these same assertions, the debtors maintain that defendant Coughlin breached a duty of "good faith," Count IV, a "duty of care," Count V, a "fiduciary duty," Count VI, and in Count VII, a duty of "good faith and fair dealing"

owed to them.  In Count VIII, the debtors contend that LTI aided and abetted defendant

Coughlin in his breach of these various duties.

A.

Before addressing these specific claims, I note that many of the duties

allegedly violated by defendant Coughlin are components, under Delaware law, of the

obligations owed by a fiduciary.  Specifically, as to the duties of care and loyalty, the

Delaware Supreme Court explained:

> We begin with the bedrock statutory principle that "[t]he
> business and affairs of every corporation . . . shall be managed
> by or under the direction of a board of directors. . . ."  In
> discharging their management function, "directors owe
> fiduciary duties of care and loyalty to the corporation and its
> shareholders."  These duties stem in part from the
> quasi-trustee and agency relationship directors have to the
> corporation and stockholders that they serve.  Our exposition
> of the duty of loyalty is traceable to Guth v. Loft, Inc., where
> we held that "[c]orporate officers and directors are not
> permitted to use their position of trust and confidence to
> further their private interests."

Schoon v. Smith, 953 A.2d 196, 206 (Del. 2008) (footnotes omitted).  Similarly,

> [i]t is basic to our law that the board of directors has the
> ultimate responsibility for managing the business and affairs
> of a corporation.  8 Del. C. § 141(a).  In discharging this
> function, the directors owe fiduciary duties of care and loyalty
> to the corporation and its shareholders. . . .

Mills Acquisition Co. v. Macmillan, Inc., 559 A.2d 1261, 1280 (Del. 1988) (citation

omitted).  Moreover, acting in good faith is also incumbent upon a fiduciary:

> The failure to act in good faith may result in liability because
> the requirement to act in good faith "is a subsidiary
> element[,]" i.e., a condition, "of the fundamental duty of

loyalty." It follows that because a showing of bad faith
conduct, in the sense described in <u>Disney</u> and <u>Caremark</u>, is
essential to establish director oversight liability, the fiduciary
duty violated by that conduct is the duty of loyalty.

This view of a failure to act in good faith results in two
additional doctrinal consequences. First, although good faith
may be described colloquially as part of a "triad" of fiduciary
duties that includes the duties of care and loyalty, the
obligation to act in good faith does not establish an
independent fiduciary duty that stands on the same footing as
the duties of care and loyalty. Only the latter two duties,
where violated, may directly result in liability, whereas a
failure to act in good faith may do so, but indirectly. The
second doctrinal consequence is that the fiduciary duty of
loyalty is not limited to cases involving a financial or other
cognizable fiduciary conflict of interest. It also encompasses
cases where the fiduciary fails to act in good faith.

<u>Stone ex rel. AmSouth Bancorporation v. Ritter</u>, 911 A.2d 362, 369-70 (Del. 2006)

(footnote omitted).

Not only are duties of loyalty, care and good faith components of a

fiduciary duty, so is the duty of candor or disclosure.

We begin by observing that the board's fiduciary duty of
disclosure, like the board's duties under <u>Revlon</u> and its
progeny, is not an independent duties [sic] but the application
in a specific context of the board's fiduciary duties of care,
good faith, and loyalty.

<u>Malpiede v. Townson</u>, 780 A.2d 1075, 1086 (Del. 2001); <u>see</u>, <u>e.g.</u>, <u>Stroud v. Grace</u>, 606

A.2d 75, 84 (Del. 1992) ("[W]e note that the term 'duty of candor' does not import a

unique or special rule of disclosure. It represents nothing more than the well-recognized

proposition that directors of Delaware corporations are under a fiduciary duty to disclose

fully and fairly all material information within the board's control when it seeks

shareholder action."); <u>In re CheckFree Corp. Shareholders Litigation</u>, 2007 WL 3262188,

at *2 (Del. Ch. 2007) ("This 'duty of disclosure' is not a separate and distinct fiduciary

duty. . . ."); <u>Metro Communication Corp. BVI v. Advanced Mobilecomm Technologies,</u>

<u>Inc.</u>, 854 A.2d 121, 157 (Del. Ch. 2004) (a "duty of disclosure" is a component of the

fiduciary duty of loyalty).

Even the debtors' claim of usurpation of a business opportunity stems,

under relevant state law, from a fiduciary's duty of loyalty.

> The doctrine of corporate opportunity represents but one
> species of the broad fiduciary duties assumed by a corporate
> director or officer.  A corporate fiduciary agrees to place the
> interests of the corporation before his or her own in
> appropriate circumstances.  In light of the diverse and often
> competing obligations faced by directors and officers,
> however, the corporate opportunity doctrine arose as a means
> of defining the parameters of fiduciary duty in instances of
> potential conflict.  The classic statement of the doctrine is
> derived from the venerable case of <u>Guth v. Loft, Inc.</u> [5 A.2d
> 503 (Del. 1939)].  In <u>Guth</u>, this Court held that:

>> if there is presented to a corporate officer or
>> director a business opportunity which the
>> corporation is financially able to undertake, is,
>> from its nature, in the line of the corporation's
>> business and is of practical advantage to it, is
>> one in which the corporation has an interest or a
>> reasonable expectancy, and, by embracing the
>> opportunity, the self-interest of the officer or
>> director will be brought into conflict with that
>> of the corporation, the law will not permit him
>> to seize the opportunity for himself.

> <u>Guth</u>, 5 A.2d at 510-11.

> The corporate opportunity doctrine, as delineated by <u>Guth</u> and
> its progeny, holds that a corporate officer or director may not
> take a business opportunity for his own if: (1) the corporation
> is financially able to exploit the opportunity; (2) the
> opportunity is within the corporation's line of business; (3)
> the corporation has an interest or expectancy in the
> opportunity; and (4) by taking the opportunity for his own, the
> corporate fiduciary will thereby be placed in a position

21

> inimicable to his duties to the corporation.  The Court in <u>Guth</u>
> also derived a corollary which states that a director or officer
> may take a corporate opportunity if: (1) the opportunity is
> presented to the director or officer in his individual and not
> his corporate capacity; (2) the opportunity is not essential to
> the corporation; (3) the corporation holds no interest or
> expectancy in the opportunity; and (4) the director or officer
> has not wrongfully employed the resources of the corporation
> in pursuing or exploiting the opportunity.  <u>Guth</u>, 5 A.2d at
> 509.

<u>Broz v. Cellular Information Systems, Inc.</u>, 673 A.2d 148, 154-55 (Del. 1996).

B.

Therefore the first issue posed by defendant Coughlin's motion to dismiss is whether there are fiduciary duties owed by each member of a limited liability company formed under Delaware law.  The debtors contend that every member owes fiduciary duties to the LLC.  The defendants disagree.

In Delaware, an LLC is an alternative business entity, organized under Chapter 18 of Title 6 of the Delaware Code.  6 Del. C. §§ 101, <u>et seq.</u>  The Delaware LLC Act "can be characterized as a 'flexible statute' because it generally permits members to engage in private ordering with substantial freedom of contract to govern their relationship, provided they do not contravene any mandatory provisions of the Act."  <u>Elf Atochem North America, Inc. v. Jaffari</u>, 727 A.2d 286, 290 (Del. 1999); <u>see also</u> 6 Del. C. § 18-1101(b) ("It is the policy of this chapter to give the maximum effect to the principle of freedom of contract and to the enforceability of limited liability company agreements.").

22

The Delaware LLC Act, consistent with the Delaware Supreme Court's description in Elf Atochem, provides great flexibility to organizers of limited liability companies with regard to fiduciary duties.  Specifically, section 1101(c) of the Act provides:

> To the extent that, at law or in equity, a member or manager or other person has duties (including fiduciary duties) to a limited liability company or to another member or manager or to another person that is a party to or is otherwise bound by a limited liability company agreement, the member's or manager's or other person's duties may be expanded or restricted or eliminated by provisions in the limited liability company agreement; provided, that the limited liability company agreement may not eliminate the implied contractual covenant of good faith and fair dealing.

6 Del. C. § 18-1101(c).

Under Delaware law, the management duties of a limited liability company may be vested either in its some or all of its members or in a designated manager.  6 Del. C. § 18-402.  Regardless of the management structure, state law permits the LLC's operating agreement to define the duties (including fiduciary duties) owed to the entity by its members, managers, or other parties to the agreement.  The only limitation placed on parties in drafting the operating agreement is that the implied covenant of good faith and fair dealing, a principle of contract law, may not be eliminated.  See generally Kelly v. Blum, 2010 WL 629850, at *10 (Del. Ch. 2010).

Accordingly, the starting place in determining applicable duties owed by members of the LLC is the operating agreement itself.  See, e.g., Bay Center Apartments Owner, LLC v. Emery Bay PKI, LLC, 2009 WL 1124451, at *8 (Del. Ch. 2009); Health Robotics, LLC v. Bennett, 2009 WL 5033966, at *5 (E.D. Pa. 2009).  In this proceeding, however, the debtors have not attached their operating agreements to their complaint; nor

23

do they allege that the operating agreements specifically impose any duties upon its members owed to the LLCs.  For example, 6 Del. C. § 18-107 permits, unless the operating agreement states to the contrary, members to "lend money to" and to "transact other business with" the LLC, with the same rights as a non-member.

Thus, for purposes of the defendants' motion to dismiss, I assume that the debtors' operating agreements are silent in imposing or eliminating any duties upon its members.  Nor do those agreements restrict members from being creditors of the debtors. I further assume, as there are no allegations to the contrary, that defendant Coughlin has no management responsibilities in the debtors' operations, nor does he hold a controlling interest in either debtor LLC.  The debtors' complaint, therefore, will state a cause of action to the extent that all members of LLCs under Delaware law have fiduciary and/or other duties to the LLC imposed by common law, which duties are binding unless eliminated by the operating agreement.  See generally Kelly v. Blum, 2010 WL 629850, at *10.

V.

A.

In considering the fiduciary obligations arising in limited liability companies, I note that Delaware courts "[t]raditionally . . . have reasoned from fiduciary relationships recognized in one context to impose fiduciary duties in what they believe to

be analogous contexts."  Steele, <u>Judicial Scrutiny of Fiduciary Duties in Delaware</u>

<u>Limited Partnerships and Limited Liability Companies</u>, 32 Del. J. Corp. L. 1, 7 (2007).

 In the corporate context, the identity of those who owe fiduciary duties to a

corporation are well-established in Delaware.  "A cardinal precept of the General

Corporation Law of the State of Delaware is that directors, rather than shareholders,

manage the business and affairs of the corporation. . . .  The existence and exercise of this

power carries with it certain fundamental fiduciary obligations to the corporation and its

shareholders." <u>Aronson v. Lewis</u>, 473 A.2d 805, 811 (Del. 1984), <u>overruled</u> <u>on</u> <u>other</u>

<u>grounds</u>, <u>Brehm v. Eisner</u>, 746 A.2d 244 (Del. 2000).  Thus, in Delaware, a fiduciary

relationship arises not from an ownership interest in a corporation, but from a position of

management or control.  <u>See</u>, <u>e.g.</u>, <u>Guth v. Loft, Inc.</u>, 5 A.2d 503, 510 (Del. 1939)

("Corporate officers and directors are not permitted to use their position of trust and

confidence to further their private interests.  While technically not trustees, they stand in a

fiduciary relation to the corporation and its stockholders."); <u>Singer v. Magnavox Co.</u>, 380

A.2d 969, 976-77 (Del. 1977), <u>overruled on other grounds</u>, <u>Weinberger v. UOP, Inc.</u>, 457

A.2d 701, 701 (Del. 1983) ("It is settled Delaware law, for example, that corporate

officers and directors, and controlling shareholders, owe their corporation and its minority

shareholders a fiduciary obligation . . . .") (internal citations omitted).

 Similarly, in the context of limited partnerships, a limited partner that has

no power to control or manage the partnership is likened to a minority shareholder

without control and owes no common law, statutory or similar fiduciary duty to the

partnership.  <u>See</u> <u>Cantor Fitzgerald, L.P. v. Cantor</u>, 2001 WL 1456494, at *21 (Del. Ch.

25

2001); Bond Purchase, L.L.C. v. Patriot Tax Credit Properties, L.P., 746 A.2d 842, 864

(Del. Ch. 1999):

> [A] fiduciary is typically one who is entrusted with the power
> to manage and control the property of another.  As the holder
> of 5 BUC$ and in the absence of a provision in the
> Partnership Agreement granting BUC$ holders the right to
> manage or control Partnership property, Bond stands in no
> such relationship to the other limited partners.  Bond's
> mini-tender offer is akin to a minority shareholder making a
> mini-tender offer for a corporation's stock–an action to which
> fiduciary duties would not normally apply.

(footnotes omitted).

Unless a limited partnership agreement so provides, a general partner and a

controlling limited partner owe various duties to the partnership.  See Gotham Partners,

L.P. v. Hallwood Realty Partners, L.P., 2000 WL 1476663, at *10 (Del. Ch. 2000)

("Absent a contrary provision in the partnership agreement, the general partner of a

Delaware limited partnership owes the traditional fiduciary duties of loyalty and care to

the Partnership and its partners."); R.S.M. Inc. v. Alliance Capital Management Holdings

L.P., 790 A.2d 478, 497-98 (Del. Ch. 2001) (analyzing only whether default fiduciary

principles apply to a general partner of a limited partnership in light of language of a

partnership agreement that did not expressly disclaim all fiduciary duties); see also Pierce,

Overview of Substantive Law Governing Partnerships and Limited Liability Companies,

SR012 ALI-ABA 1, at *30 (July 2009) ("Due to the traditional 'passive' role of limited

partners in a limited partnership, it has generally been thought that limited partners owe

no corresponding duties of loyalty, care and good faith to the limited partnership or the

other partners.").

26

In the context of limited liability companies, the Delaware Chancery Court

recently stated:

> . . . Delaware cases interpreting Section 18-1101(c) have
> concluded that, despite the wide latitude of freedom of
> contract afforded to contracting parties in the LLC context,
> "in the absence of a contrary provision in the LLC
> agreement," LLC managers and members owe "traditional
> fiduciary duties of loyalty and care" to each other and to the
> company.  Thus, unless the LLC agreement in a
> manager-managed LLC explicitly expands, restricts, or
> eliminates traditional fiduciary duties, managers owe those
> duties to the LLC and its members and controlling members
> owe those duties to minority members.  Therefore, I must
> determine whether the 2008 LLC Agreement expanded,
> restricted, or eliminated the default fiduciary duties the
> Managers (Blum, Breen, and Kestenbaum) and controlling
> Members (MBC Investment and MBC Lender) owed to Kelly,
> and whether a breach of any existing duty would support a
> direct, as opposed to a derivative, claim.

Kelly v. Blum, 2010 WL 629850, at *10 (footnotes omitted).

In other words, Delaware common law does not impose fiduciary and other

related duties to members of LLCs who are neither managers nor controlling members.

Cf. In re Longview Aluminum, LLC, 419 B.R. 351 (Bankr. N.D. Ill. 2009) (individual

who was one of five managers of the LLC held a position equivalent to corporate director

and thus was an "insider" for purposes of the Bankruptcy Code).  Such members are

likened to minority shareholders: passive investors who have no control over the

management or operations of the LLC.

Despite the emphasis in Kelly upon controlling or managing LLC members,

and despite the absence of fiduciary duties imposed upon minority, non-controlling

shareholders and limited partners, the debtors rely upon four decisions which, they

contend, support their position that Delaware law imposes fiduciary duties upon all

members of a limited liability company, even those not in control of or managing the

LLC.  Upon review of those decisions, however, I find all of them distinguishable.

In Bay Center Apartments Owner, LLC v. Emery Bay PKI, LLC, 2009 WL

1124451 (Del. Ch. 2009), the state court denied the defendants' motion to dismiss,

holding that the plaintiff "stated a claim for breach of the implied covenant of good faith

and fair dealing" and a claim for breach of fiduciary duties against the defendants.  The

defendant (referred to as "PKI"), however, was the manager of the plaintiff LLC (with the

other defendants as its agents) and the court stated that "in the absence of a contrary

provision in the LLC agreement, the manager of an LLC owes the traditional fiduciary

duties of loyalty and care to the members of the LLC." Id., at *8.[3]

_____

[3]The debtors emphasize a sentence in a footnote found in the Bay Center decision.
The entire footnote stated:

> The Delaware LLC Act is silent on what fiduciary duties members
> of an LLC owe each other, leaving the matter to be developed by
> the common law.  See 6 Del. C. § 18-1104; Robert L. Symonds, Jr.
> & Matthew J. O'Toole, Delaware Limited Liability Companies §
> 9.04[B][3] (2007).  The LLC cases have generally, in the absence
> of provisions in the LLC agreement explicitly disclaiming the
> applicability of default principles of fiduciary duty, treated LLC
> members as owing each other the traditional fiduciary duties that
> directors owe a corporation. . . .  Moreover, when addressing an
> LLC case and lacking authority interpreting the LLC Act, this court
> often looks for help by analogy to the law of limited partnerships
> . . . .  In the limited partnership context, it has been established that
> "[a]bsent a contrary provision in the partnership agreement, the
> general partner of a Delaware limited partnership owes the
> traditional fiduciary duties of loyalty and care to the Partnership
> and its partners." Gotham Partners, L.P. v. Hallwood Realty
> Partners, L.P., 2000 WL 1476663, at *10 (Del. Ch. Sept. 27, 2000).

Id., at *8 n.33 (emphasis added) (citations omitted).  The court's reference in this footnote to the
fiduciary duties of a general partner to a partnership and to its limited partners, as well as the fact
that defendant PKI was the manager of the plaintiff LLC, persuade me that the state court was

(continued...)

Similarly, DirectTV Latin America, LLC v. Park 610, LLC, 2010 WL 305201 (S.D.N.Y. 2010), is distinguishable.  Before the district judge was a dismissal motion for lack of personal jurisdiction and forum non conveniens.  Id., at *1.  The magistrate judge had issued a recommendation, however, that had addressed a motion to dismiss for failure to state a claim.  Id., at *2.  A civil action had been brought by the minority member of Latin American Sports, LLC against the controlling member of the LLC and others, including the manager of the LLC.  The complaint alleged, inter alia, that there had been a breach of fiduciary duties owed to the plaintiff.  Id., at *2, *27.

Although the court cited the Bay Center language, quoted above, that LLC members owe a fiduciary duty to each other,[4] the magistrate judge's recommendation upheld only the fiduciary duties of the controlling member and manager to the minority LLC member:

> DirectTV [the minority LLC member] has sufficiently alleged that Park 610 [the controlling LLC member] breached its fiduciary duties owed directly to DirectTV as co-member of an LLC, and that Avila breached his fiduciary duty owed directly to DirectTV as the manager of the LLC."  Id., at *27.

Therefore, this decision does not support the debtors' claim that defendant Coughlin, a minority, non-controlling LLC member, owed a fiduciary duty to the LLCs.

---

[3](...continued)
describing the duties that a managing or controlling LLC member had in the absence of a contrary provision in the LLC operating agreement, rather than opining about the duties owed by minority members.  None of the cases cited by the court address the duties of minority members of LLCs.

[4]As the plaintiffs in this adversary proceeding are not members of the LLCs but the companies themselves, the issue of whether Delaware law imposes a fiduciary duty upon every member of an LLC to every other member (absent a contrary provision in the LLC operating agreement) is not actually before me.

29

Academic Imaging, LLC v. Soterion Corp., 2009 WL 3805807 (6th Cir. 2009), also cited by the debtors, involved claims brought by NHI LLC and its 50% member against the other 50% member and affiliated entities and individuals.  Id., at *1. Moreover, while each member appointed a manager, the defendant's managing agent operated the LLC on a daily basis.  Id., at *1.

The Sixth Circuit concluded that the LLC member who controlled the individual that actually operated NHI owed fiduciary duties to the other member.  Id., at *7 ("Plaintiffs claim that Soterion breached the fiduciary duty it owed to Academic, its fellow member of a limited liability company.")  The appellate court explained that, under Ohio law, "courts treat the fiduciary duties owed by members in a limited liability company as substantially the same as those owed by partners in a partnership."  Id., at *7.[5]

This decision is distinguishable from the instant proceeding because: there is no allegation that defendant Coughlin exercised any control over the operations of either debtor LLC; the fiduciary duty claims are not brought against him by another member of the debtor LLCs; and Delaware law analogizes a passive member of an LLC to a passive limited partner, not to a general partner.  See Bond Purchase, L.L.C. v. Patriot Tax Credit Properties, L.P., 746 A.2d at 864.

The last decision relied upon by the debtors is Health Robotics, LLC v. Bennett, 2009 WL 5033966 (E.D. Pa. 2009).  Although the district court, in determining a

---

[5]The Court of Appeals cited Blair v. McDonagh, 177 Ohio App. 3d 262, 277 (2008), for this state law proposition.  In Blair, a state appellate court upheld a jury verdict brought by one 50% LLC member against the other 50% member for breach of fiduciary duty. The losing member "ran the day-to-day operations and had broad authority to act without McDonagh's input."  Id., at 269.  Thus, the fiduciary duty in Blair was imposed upon the individual member who controlled the operation of the LLC.

motion to dismiss, found that a non-controlling membership in an LLC can give rise to a

fiduciary duty to the LLC under Delaware law, it explained:

> Plaintiffs have successfully pled that a fiduciary duty was
> predicated upon Defendants' membership in HRLLC.  First,
> the issuance of a certificate of equity was sufficient to make
> Defendants Itochu and Devon Medical members of the
> limited liability company.  Further, <u>Plaintiffs state that
> HRLLC's [operating] agreement creates fiduciary duties
> between its members and the company.</u>  Although Plaintiffs
> do not provide a copy of this agreement, nor do they detail the
> full extent of this fiduciary duty, given the common nature of
> fiduciary duties in these circumstances, and given that we are
> bound to accept all of Plaintiffs' factual allegations as true,
> the existence of a fiduciary duty between Plaintiff HRLLC
> and Defendants Devon Medical and Itochu can be described
> as at least plausible.

<u>Id.</u>, 2009 WL 5033966, at *5 (emphasis added).

As noted earlier, Delaware law permits parties to an LLC operating

agreement to impose fiduciary responsibilities upon any or all of its members.  6 Del. C. §

18-1101(c).  In <u>Health Robotics</u>, the plaintiff LLC pleaded that the operating agreement

imposed such duties upon all its members, and the district court accepted that averment as

true for purposes of the motion to dismiss.[6]  In this adversary proceeding, the debtors

make no such averment.  Thus, this last decision is also distinguishable.

In the absence of contractual provisions to the contrary, under Delaware

law, "[t]ypically, fiduciary duties are imposed when someone exercises dominion and

control over the assets and property of another such that the controlling person should be

prohibited from dealing with those assets and property in a manner that unfairly profits

---

[6]The district court ultimately dismissed this breach of fiduciary claim, however,
because of the LLC's failure to plead any harm caused by such a breach.  <u>Id.</u>, 2009 WL 5033966,
at *6.

31

himself."  Weil v. Morgan Stanley DW Inc., 877 A.2d 1024, 1036-37 (Del. Ch. 2005); see

Ribstein, The Emergence of the Limited Liability Company, 51 Business Lawyer 1, at

*15-*16 (November 1995) ("Fiduciary duties are associated with agents who control

others' property and who, therefore, implicitly agree to further the principals' interests

rather than their own.").  In the debtors' complaint, there is no allegation that defendant

Coughlin exercised any control or management duties involving these LLCs, either

directly or through an agent, nor that he had any right to do so.  Therefore, under

Delaware law, he held no fiduciary duties in favor of the debtors simply as a minority

member of the LLCs.

        The debtors accordingly have failed to state a cause of action against

defendant Coughlin in counts I, II, III, IV, V  and VI.   I shall recommend to the district

court that those counts be dismissed.


                                    B.


        It follows from that recommendation that no claim against defendant LTI

for aiding and abetting in count VIII has been stated.

        Delaware courts recognize a claim for aiding and abetting a breach of

fiduciary duties.  See, e.g., Globis Partners, L.P. v. Plumtree Software, Inc., 2007 WL

4292024, at *15 (Del. Ch. 2007).  Under Delaware law, however, a plaintiff must show

four elements to establish a valid claim for aiding and abetting a breach of fiduciary duty:

"(1) the existence of a fiduciary relationship; (2) the fiduciary breached its duty; (3) a

defendant, who is not a fiduciary, knowingly participated in a breach; and (4) damages to

the plaintiff resulted from the concerted action of the fiduciary and the nonfiduciary."  Id.;
see also Twin Bridges Ltd. Partnership v. Draper, 2007 WL 2744609 (Del. Ch. 2007).

Because there are no allegations that, if proven, would establish defendant
Coughlin as a fiduciary of either debtor-LLC, the debtors' complaint against LTI for
aiding and abetting defendant Coughlin fails to satisfy the first element: the existence of a
fiduciary relationship.  Accordingly, count VIII must be dismissed and an order shall be
so entered.


VI.


In count VII, the debtors assert that defendant Coughlin violated his
contractual duty of good faith and fair dealing.

As noted earlier, this contractual obligation cannot be eliminated in an LLC
operating agreement.  6 Del. C. § 18-1101(c).  Moreover, in Delaware the covenant of
good faith and fair dealing is implied in all contracts.  See, e.g., Dunlap v. State Farm Fire
and Casualty Co., 878 A.2d 434, 441-42 (Del. 2005); Blish v. Thompson Automatic Arms
Corp., 64 A.2d 581, 597 (Del. 1948); Kuroda v. SPJS Holdings, L.L.C., 971 A.2d 872
(Del. Ch. 2009):

> The implied covenant of good faith and fair dealing inheres in
> every contract and "requires 'a party in a contractual
> relationship to refrain from arbitrary or unreasonable conduct
> which has the effect of preventing the other party to the
> contract from receiving the fruits' of the bargain."

Id., at 888 (footnote omitted).

Although such a covenant is implied in every contract, Delaware law limits

33

its application:

> The implied covenant cannot be invoked to override the
> express terms of the contract.  Moreover, rather than
> constituting a free floating duty imposed on a contracting
> party, the implied covenant can only be used conservatively
> "to ensure the parties' 'reasonable expectations' are fulfilled."
> Thus, to state a claim for breach of the implied covenant,
> Kuroda "must allege a specific implied contractual obligation,
> a breach of that obligation by the defendant, and resulting
> damage to the plaintiff."  General allegations of bad faith
> conduct are not sufficient.  Rather, the plaintiff must allege a
> specific implied contractual obligation and allege how the
> violation of that obligation denied the plaintiff the fruits of the
> contract.  Consistent with its narrow purpose, the implied
> covenant is only rarely invoked successfully.

Id.

Delaware's Chancery Court has explained the elements of a cause of action

under this implied covenant:

> Because it is an implied contractual obligation that is asserted
> as the basis for the relief sought, the appropriate legal test is
> not difficult to deduce.  It is this: is it clear from what was
> expressly agreed upon that the parties who negotiated the
> express terms of the contract would have agreed to proscribe
> the act later complained of as a breach of the implied
> covenant of good faith–had they thought to negotiate with
> respect to that matter.  If the answer to this question is yes,
> then, in my opinion, a court is justified in concluding that
> such act constitutes a breach of the implied covenant of good
> faith.

Katz v. Oak Industries Inc., 508 A.2d 873, 880 (Del. Ch. 1986); see, e.g., Benitec

Australia Ltd. v. Promega Corp., 2005 WL 549552, at *4 (D. Del. 2005); In re Kirkwood

Kin Corp. v. Dunkin' Donuts, Inc., 1997 WL 529587, at *15 (Del. Super. 1997).

Moreover, "[i]t follows that where the subject at issue is expressly covered by the

contract, or where the contract is intentionally silent as to that subject, the implied duty to

perform in good faith does not come into play." Dave Greytak Enterprises, Inc. v. Mazda

Motors of America, Inc., 622 A.2d 14, 23 (Del. Ch. 1992).

   I find it difficult to apply Delaware law, as described above, to determine

whether the allegations found in count VII of the debtors' complaint state a cause of

action because the contracts—viz., the operating agreements—are not attached.  This

difficulty fixes upon the debtors, as this cause of action must be dismissed unless the

debtors can demonstrate that "it is clear from the contract that the parties would have

agreed to that term had they thought to negotiate the matter."  Fisk Ventures, LLC v.

Segal, 2008 WL 1961156, at *10 (Del. Ch. 2008).

   Moreover, the operating agreements are likely to have been signed by the

members of the LLCs, rather than the debtor LLCs themselves.  See, e.g., Kelly v. Blum.

It would have been the members who would have negotiated the terms of the operating

agreement and who may suffer injury if an implied covenant is not fulfilled— presumably

by the potential loss of or diminution in the value of their membership interests.

Therefore, any claim for an alleged breach of an implied covenant of the operating

agreements should be asserted by the debtors' members, rather than by the LLCs.  See

generally RJ Associates, Inc. v. Health Payors' Organization Ltd. Partnership, HPA, Inc.,

1999 WL 550350, at *9 (Del. Ch. 1999) (claim for breach of implied covenant brought by

limited partner against the other limited partner and the general partner).

   Even if I assume arguendo that the debtor LLCs have standing to raise a

breach of this implied covenant, and that the absence of the underlying contracts is not

dispositive, I conclude that the debtors have failed to state a cause of action in count VII.

Essentially, the debtors contend that it was a breach of the implied covenant of good faith and fair dealing for one of their members to obtain information that the debtors were in default of their loan agreements with CoBank and were negotiating with CoBank to remedy that default, and then obtain an assignment of the CoBank loan agreement on behalf of an entity of which the member was president. This contention, however, overlooks two provisions of the Delaware Limited Liability Company Act, as well as the absence of any confidentiality agreement.

First, as mentioned above, 6 Del. C. § 18-107 expressly permits a member of an LLC to "lend money to" and "transact other business with" the LLC on the same terms as a non-member, unless the operating agreement states otherwise.[7] As there is no allegation that the debtors' operating agreements provide otherwise, Mr. Coughlin was free to become a creditor of the debtors. That being so, it is not persuasive to argue that he breached an implied provision of these agreements by having an entity of which he was president become a creditor via assignment.

Second, 6 Del. C. § 18-305 governs access by LLC members to information about the LLC. In relevant part, it states:

––––––––––––––––––––––––

[7] 6 Del. C. § 18-107 states:

Except as provided in a limited liability company agreement, a member or manager may lend money to, borrow money from, act as a surety, guarantor or endorser for, guarantee or assume 1 or more obligations of, provide collateral for, and transact other business with, a limited liability company and, subject to other applicable law, has the same rights and obligations with respect to any such matter as a person who is not a member or manager.

36

(a) Each member of a limited liability company has the right, subject to such reasonable standards (including standards governing what information and documents are to be furnished at what time and location and at whose expense) as may be set forth in a limited liability company agreement or otherwise established by the manager or, if there is no manager, then by the members, to obtain from the limited liability company from time to time upon reasonable demand for any purpose reasonably related to the member's interest as a member of the limited liability company:

(1) True and full information regarding the status of the business and financial condition of the limited liability company;

\*\*\*

(6) Other information regarding the affairs of the limited liability company as is just and reasonable.

If the manager of an LLC believes that a member is seeking confidential information that would be harmful to the LLC to disclose to its own members, she need not disclose it:

(c) The manager of a limited liability company shall have the right to keep confidential from the members, for such period of time as the manager deems reasonable, any information which the manager reasonably believes to be in the nature of trade secrets or other information the disclosure of which the manager in good faith believes is not in the best interest of the limited liability company or could damage the limited liability company or its business or which the limited liability company is required by law or by agreement with a 3rd party to keep confidential.

Disputes regarding the confidentiality of information are resolved in Delaware's Chancery Court.  6 Del. C. § 18-305(f).  Implicit in section 18-305 is the understanding that non-fiduciary members obtaining information may make use of it for their own benefit:

The fiduciary duty of agents should be contrasted with the duty of all contracting parties to act in "good faith."  "Good

37

> faith" is an implied term in all contracts.  In contrast to
> fiduciary duties, good faith is not an obligation to act
> unselfishly, but rather only a principle of contract
> interpretation which assumes the parties agreed to act
> reasonably in light of the terms of the contract.  For example,
> in Market Street Associates Limited Partnership v. Frey, the
> Seventh Circuit held that a lessee may not have a duty to point
> out to a lessor that the lessor's act of rejecting financing
> would trigger an obligation under the lease compelling the
> lessor to sell the property for less than market value.
> Fiduciary duties of managers differ, therefore, from good
> faith duties that are imposed on members as such.  The latter
> mainly have a duty to refrain from using their contract rights
> unreasonably, as by using a power to withdraw from or
> compel liquidation of the firm to deny co-partners their
> legitimate share of partnership property.  Non-managing
> members otherwise may act in their self-interest.

Ribstein, The Emergence of the Limited Liability Company 51 Business Law. 1, 16

(November 1995) (footnotes omitted).

In this proceeding, the debtors allege that defendant Coughlin, in June

2007, "demanded" information about the debtors' CoBank loan and the negotiations.  "In

response to these demands, the [debtors] provided Coughlin with limited and general

information about the settlement discussions with CoBank."  Complaint, ¶ 24.  They

further assert that defendant Coughlin, using this information, successfully negotiated an

assignment agreement with CoBank in October 2007 on behalf of LTI.

Presumably, defendant Coughlin sought information from the debtors under

section 18-305(a)(1) or (6).  If disclosure of such information would have been harmful,

the debtors had the statutory right to refuse his request.  Thus, it appears that the debtors

concluded that disclosure of "limited and general information" (which occurred four

months prior to the CoBank loan assignment) would not be harmful to them.  Moreover,

the debtors do not allege that the information provided in June 2007 was the subject of any confidentiality agreement.

Accordingly, as defendant Coughlin was under no fiduciary obligation to the debtors and so was free to act in his self-interest, as he was free to become a creditor of the debtors, and as he is accused of no more than using limited and general information that he might have had a statutory right to obtain (or, if not, that the debtors elected not to deny to him), the debtors have not stated a cause of action for breach of an implied contractual covenant of good faith and fair dealing.

VII.

Having concluded that Counts I-VIII of the adversary complaint fail to state a cause of action, I must consider whether the plaintiffs should be given leave to amend. As stated above, even if the plaintiffs do not seek leave to amend, the court has an affirmative duty to inform them of their right to do so, unless such amendment would be inequitable or futile.  See, e.g., Griffen-El v. Beard, 2009 WL 1229599, at *6 (E.D. Pa. 2009).

In this adversary proceeding, the only factual amendment that would support an assertion that defendant Coughlin owed fiduciary duties to the debtor LLCs would be that one or both LLC operating agreements contained provisions imposing fiduciary duties upon all of its members, even those not in control or in management. Alternatively, the same result would follow if the debtors were able to allege that defendant Coughlin was actually in control of either debtor LLC.  From evidence provided in a recent contested matter, I learned that defendant Coughlin did not control

either debtor.  And if the operating agreements supported the debtors' claims of breach of fiduciary duties, the relevant terms of those agreements would have been attached or otherwise incorporated in the complaint.

Similarly, if the operating agreements contained restrictions on members' activities with regard to the debtor LLCs, or if a confidentiality agreement had been entered into by defendant Coughlin, the debtors' complaint would have so asserted.

Accordingly, no valid purpose would be achieved by affording the debtors leave to amend their complaint.  Therefore, I shall recommend to the District Court that Counts I through VII should be dismissed for failure to state causes of action.  I shall also enter an order dismissing Count VIII.

An appropriate recommendation and order shall be entered.

_____
BRUCE FOX
United States Bankruptcy Judge

Dated: March 25, 2010